HONORABLE RICHARD A. JONES

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| ORIE KRUSE, | NO.  2:15-cv-01896-RAJ |
| Plaintiff, | ORDER |
| v. | |
| HEATHER P. GILMORE, an individual, and JOHN R. BATISTE, an individual, | |
| Defendants. | |

This matter comes before the Court on the Defendants' Motion for Summary Judgment. Dkt. # 17.  Plaintiff opposes the motion. Dkt. # 21.  For the reasons that follow, the Court GRANTS Defendants' motion.

## I.  BACKGROUND[1]

In February 2014, Trooper Heather Gilmore stopped plaintiff Orie Kruse for driving 89 miles per hour in a 60 mile per hour zone.  Dkt. # 8 (Complaint), Dkt. # 18-1, at p.1 (in-car video).  Mr. Kruse was vocal about his disagreement with Trooper Gilmore's

_____

[1]The Court strongly disfavors footnoted legal citations.  Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014).  The Court strongly discourages the Parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

interpretation of Washington law.  Dkt. # 18-1, at p.1 (in-car video).  Trooper Gilmore encouraged Mr. Kruse to review the RCWs and handle the ticket in superior court.  *Id.*

Not satisfied with the traffic stop, Mr. Kruse abruptly reversed his car, killed the engine, and approached Trooper Gilmore.  *Id.*  The two began a heated discussion in which Trooper Gilmore repeatedly asked Mr. Kruse to give her space and return to his car. *Id.*  Mr. Kruse grabbed for his cell phone and used it to record the conversation.  Dkt. # 24, at p. 24 (cell phone video).  The interaction continued to escalate and Trooper Gilmore finally warned Mr. Kruse that if he would not return to his vehicle she would arrest him for obstructing a police officer.  Dkt. # 18-1, at p.1 (in-car video).

Trooper Gilmore began to place Mr. Kruse under arrest, but he was able to escape from her hold.  *Id.*  Trooper Gilmore followed Mr. Kruse to his vehicle and again tried to place Mr. Kruse under arrest but Mr. Kruse was able to open the driver-side door and take shelter in the vehicle.  *Id.*  Trooper Gilmore opened the door and attempted again to arrest Mr. Kruse, at which point Mr. Kruse turned his car on and sped away while the driver-side door was open and Trooper Gilmore was half in the car and half on the road.  *Id.*

Trooper Gilmore gave chase but could not relocate Mr. Kruse.  *Id.*  Neither party sustained any physical injuries.  Mr. Kruse ultimately entered an Alford plea to Obstructing Law Enforcement and Reckless Endangerment, as well as a plea to Negligent Driving in the First Degree.  Dkt. # 18-1, at pp. 4-5, 12.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively

demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnell-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### III. DISCUSSION

Mr. Kruse alleges that Trooper Gilmore used excessive force, thereby depriving him of his Fourth Amendment right to be free from unreasonable seizure. Dkt. # 8 (Complaint), at ¶ 9.  He further alleges that Trooper Gilmore's conduct "constitutes the

common law tort of battery." *Id*. at ¶ 10.  He claims that he is entitled to damages under 42 U.S.C. § 1983.

The Court can assume that Mr. Kruse is suing Defendants in their individual capacity, as evidenced by the caption on the matter.  However, Mr. Kruse's Section 1983 claim turns on whether Trooper Gilmore is immune from suit.

A. Qualified Immunity

Qualified Immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The doctrine allows officials to be free from harassment when reasonably performing their duties while also holding them accountable for exercising power irresponsibly.  *Id.*  As such, qualified immunity is "immunity from suit rather than a mere defense to liability." *Id*. (internal citations omitted).  When considering whether a defendant is immune under this doctrine, courts analyze whether the defendant violated a clearly established statutory or constitutional right.  *Caylor v. City of Seattle*, No. C11-1217RAJ, 2013 U.S. Dist. LEXIS 62486, *20 (W.D. Wash. April 30, 2013).

Whether an officer used excessive force during a stop or arrest falls within the Fourth Amendment and such claims are analyzed under the "objective reasonableness" standard.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989).  The analysis carefully balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotations omitted).  The balance considers the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.  "These factors are not exclusive, and the court may consider

any factor relevant to the reasonableness inquiry." *Caylor*, 2013 U.S. Dist. LEXIS 62486, at * 31.  The Court is careful to consider what a reasonable officer would do under the same circumstances and avoids inputting "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Caylor*, 2013 U.S. Dist. LEXIS 62486, at * 30.

Here, the record is devoid of any evidence that Trooper Gilmore used excessive force in a way that violated Mr. Kruse's Fourth Amendment right to be free from seizure. Indeed, Trooper Gilmore effectively ended her interaction with Mr. Kruse after returning his identification card and explaining the outcome of his ticket.  It was Mr. Kruse that initiated further contact by abruptly reversing his car, causing his rear tires to spin in gravel, and emerge in what appeared to be a threatening fashion.  He proceeded to aggressively engage Trooper Gilmore, even placing both Trooper Gilmore and himself in harm's way near a busy highway when he pushed his cell phone camera near her face, which caused both parties to cross over the white line that separates the shoulder from the road.  Trooper Gilmore's shoves, as evidenced by the in-car video, worked to keep Mr. Kruse out of the busy road and helped Trooper Gilmore establish space between her and Mr. Kruse.  *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment.") (internal quotations and citations omitted).

Trooper Gilmore appeared to exercise great patience with Mr. Kruse before she decided to place him under arrest for obstruction.  Her need for the use of more aggressive efforts to restrain is evidenced by Mr. Kruse's attempts to avoid arrest and ultimately flee the scene.  His actions placed both himself and Trooper Gilmore, and potentially other civilians, in danger as he quickly drove away, crossing oncoming traffic, with Trooper Gilmore still half in his car with the driver-side door open after he was clearly advised to remain and was placed under arrest.

Trooper Gilmore did not use excessive force on Mr. Kruse and did not violate his Fourth Amendment rights.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id*. at 396-97.  Accordingly, Trooper Gilmore is immune from suit in this case under the doctrine of qualified immunity.

B.  Defendant John R. Batiste

On the one hand, Mr. Kruse claims to be suing Mr. Batiste in his individual capacity, but on the other hand he appears to be trying to hold Mr. Batiste responsible under a respondeat superior theory.  The latter claim would, of course, fail as a matter of law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

In light of the Court's finding above—that Trooper Gilmore did not deprive Mr. Kruse of his constitutional rights—the claim against Mr. Batiste is moot.  Even so, and for thoroughness, the Court does not find evidence in the record that indicates whether Mr. Batiste played any role in Trooper Gilmore's training.  In fact, Mr. Kruse failed to set forth any evidence beyond citing his own Complaint to prove his claim that Mr. Batiste was responsible for training Trooper Gilmore.  Dkt. # 21, at p. 11.  At this stage, though the Court will view the evidence in the light most favorable to Mr. Kruse, the Court need not rely solely on a paragraph in the Complaint to establish that genuine issues remain regarding this claim.  *See Anderson*, 477 U.S. at 250 (finding that when the moving party supports its motion for summary judgment, the burden shifts to the adverse party to show specific facts indicating a genuine issue for trial).

**IV.CONCLUSION**

Based on the evidence, no reasonable juror could find in favor of Mr. Kruse on his claims.  Therefore, the Court GRANTS Defendants' Motion for Summary Judgment. Dkt. # 17.  This case is dismissed with prejudice.


Dated this 29th day of November, 2016.


The Honorable Richard A. Jones
United States District Judge

ORDER - 7